UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DENNIS JAY WARREN,

        Plaintiff,

    v.

OREGON DEPARTMENT OF CORRECTIONS
and THOMAS LINDSEY BRISTOL, M.D.,

        Defendants.

Case No. 3:19-cv-00632-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Dennis Warren, an adult in custody ("AIC") at the Columbia River Correctional Institution ("CRCI"), has brought a civil rights action pursuant to 42 U.S.C. § 1983 against the Oregon Department of Corrections ("ODOC") and Dr. Thomas Bristol (collectively "defendants"). Am. Compl. §§ I, II, ECF 7. Plaintiff alleges that Dr. Bristol sexually molested him during a medical exam at CRCI. *Id.* § II.D. This court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

Defendants have filed a motion for summary judgment (ECF 39), contending this case should be dismissed for plaintiff's failure to exhaust his claims pursuant to the Prison Litigation

1 – OPINION AND ORDER

Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). For the reasons discussed below, defendants' motion for summary judgment (ECF 39) is granted and this case is dismissed without prejudice.[1]

I.      **Relevant Law Regarding Exhaustion Under the PLRA**

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted the PLRA "in the wake of a sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). The PLRA strengthened the exhaustion requirement so that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Id.* at 85 (citation omitted). "Prisoners must now exhaust all "available" remedies . . . even where the relief sought—monetary damages—cannot be granted by the administrative process." *Id.* The exhaustion requirement "applies to all inmate suits about prison life" that do not involve the duration of a prisoner's sentence. *Nettles v. Grounds*, 830 F.3d 922, 932 (9th Cir. 2016) (quoting *Peter v. Nussle*, 534 U.S. 516, 532 (2002)).

The PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. *Woodford*, 548 U.S. at 93. Proper exhaustion means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original). To be available, a remedy must

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this case in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). ECF 48.

2 – OPINION AND ORDER

be available "as a practical matter; it must be capable of use; at hand." *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting *Brown*, 422 F.3d at 937) (internal quotation marks omitted).

In *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015), the Ninth Circuit articulated the procedure for determining whether an AIC exhausted available administrative remedies. First, a defendant must "prove that there was an available administrative remedy and that the prisoner did not exhaust that available remedy." *Id.* at 1191 (citation omitted). "This burden is achieved by producing testimony from jail deputies that describe the jail's grievance procedure and provide an overview of the jail's record-keeping system." *Williams v. Gore*, No. 15-CV-654, 2017 WL 1354695, at *5 (S.D. Cal. Mar. 24, 2017) (citing *Morton v. Hall*, 599 F.3d 942, 944 (9th Cir. 2010) (affirming the district court's finding that the defendants satisfied their initial burden by submitting testimony of jail coordinators who declared that they reviewed records and "found no evidence that Morton had ever filed a grievance pertaining to his assault").

Once the defendants meet their initial burden, the burden shifts to the plaintiff to provide evidence that the existing and generally available administrative remedies are effectively unavailable to the plaintiff because they were "'ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172). The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": when: (1) the "administrative procedure . . . operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme might be so opaque that it becomes . . . incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). When one

of these circumstances arises, "an inmate's duty to exhaust 'available' remedies does not come into play." *Id.* at 1859.

While plaintiffs have the burden of proving that administrative remedies were effectively unavailability, "failure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Thus, the "ultimate burden of proof . . . remains with the defendant." *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172).

A motion for summary judgment is the proper means to raise an AIC's failure to exhaust administrative remedies. *Albino*, 747 F.3d at 1166. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.*

## II.    Exhaustion Analysis

Plaintiff makes three arguments in opposition to defendants' motion. Resp., ECF 55. First, plaintiff argues that the PLRA's exhaustion defense is a "legally impermissible defense." *Id.* at 5. However, as defendants observe, the Supreme Court has repeatedly enforced and upheld the PLRA's exhaustion requirements. Reply 2, ECF 59 (citing *Booth v. Churner*, 532 U.S. 731 (2001); *Woodford v. Ngo*, 548 U.S. 81 (2006); *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)). Until Congress decides to change this requirement, this court is "not at liberty to disregard the law as it is left to stand." *United States v. Perryman*, 100 U.S. 235, 237 (1879).

Second, plaintiff argues that ODOC misled him into believing he had administratively exhausted his remedies, thereby denying him an "available" remedy. *Id.* at 7-8. Third, plaintiff asserts that he sufficiently grieved his claims because ODOC had notice of the "nature of the wrong." *Id.* at 8. These last two arguments are addressed in turn below.

### A. Available Remedy

To satisfy their initial burden under *Williams*, defendants have submitted the declaration of Jacob Humphreys, who is employed by ODOC as the Statewide Grievance and Discrimination Complaint Coordinator with the Office of the Inspector General. Humphreys Decl. ¶ 1, ECF 40. In his declaration, Humphreys describes CRCI's grievance procedures and explains that grievances are processed in accordance with the Oregon Administrative Rules ("OAR"), Chapter 291, Division 109.[2] *Id.* ¶ 6. AICs are encouraged to communicate with line staff as the primary means of resolving disputes but advised that they may file a grievance if it complies with the administrative rules and there is no other review process available. *Id.* ¶ 7 (citing OAR § 291-109-0100(3)). This information is provided in the orientation packet that all inmates receive when they arrive at an ODOC facility. *Id.* ¶ 8. It is also contained in the AIC handbook, and grievance forms containing instructions are available in all housing units. *Id.*

An AIC can grieve "[s]exual contact, solicitation or coercion between" an ODOC employee and the AIC. *Id.* ¶ 9 (citing OAR 291-109-0140(2)(g)). Grievances alleging sexual abuse of an AIC by a staff member must be submitted to the functional unit grievance coordinator on the department's approved AIC grievance form (CD 117). *Id.* (citing OAR 291-109-0175(3)).

Generally, to obtain a grievance review, the AIC's grievance must be submitted within 30 calendar days of the date of the incident giving rise to the grievance. *Id.* ¶ 10 (citing OAR 291-

---

[2] The OAR sections governing the "Grievance Review System (AIC)" were updated effective October 18, 2019. Humphreys Decl. ¶ 6, ECF 40. Defendants submitted the prior version of these rules, which was in effect at all times relevant to plaintiff's grievances, as an attachment. *Id.*, attach 2.

109-0150(2)). However, there is no time limit on when an AIC may submit a grievance regarding an allegation of sexual abuse. *Id.* (citing OAR 291-109-0175(4)).

If the AIC is dissatisfied with the grievance response, the AIC may file an appeal by completing a grievance appeal form and submitting it to the grievance coordinator within 14 calendar days from the date the grievance coordinator sent the response to the AIC. *Id.* ¶ 11 (citing OAR 291-109-0170(1)). If the AIC is dissatisfied with the response, the AIC may submit a final appeal by completing a grievance appeal form and filing it within 14 days of the date the initial appeal response was sent to the AIC. *Id.* (citing OAR 291-109-0170(2)(c)). This final grievance appeal is not subject to further administrative review and completes the grievance process. *Id.*

Defendants have attached the following exhibits:

(1) Plaintiff's "Inmate Complaint History" from September 1, 2010, to September 30, 2019, indicating plaintiff filed over 40 grievances during that time. Humphreys Decl., attach. 3, ECF 40.

(2) Plaintiff's October 15, 2018 CRCI Grievance (#2018-10-015), complaining "that I am being neglected by Unit 6 caregivers" because they are "so busy . . . doing things they should not be doing" and there were not enough of them. *Id.*, attach. 4.

(3) Plaintiff's December 15, 2018 Grievance Appeal Form (#2018-10-019) in which he claimed his needs related to his eyesight (a new eye exam, prescription, cane, and glasses) had not been met. *Id.*, attach 5.

(4) Plaintiff's November 5, 2018 PREA complaint to the Inspector General's office alleging that "Dr. Bristol sexually assaulted [him] during a medical exam at CRCI[.]" *Id.*, attach. 6.

Defendants' evidence demonstrates that, despite filing a PREA complaint regarding Dr. Bristol's alleged sexual assault, plaintiff did not file a grievance to the functional unit grievance coordinator using form CD 117 as prescribed by OAR 291-109-0175(3). *See id.* ¶¶ 13-16 &

6 – OPINION AND ORDER

attachs. 2, 4-5. Plaintiff does not dispute this. Thus, defendants have met their burden of showing plaintiff's failure to exhaust his administrative remedies. *Williams*, 775 F.3d at 1191.

The burden then shifts to plaintiff to prove the existence of facts that made the remedy effectively unavailable to him. *Id.* Plaintiff contends that defendants "confused" and "misled" him by "encouraging him to deal with his PREA grievance through informal conversations and the PREA hotline." Resp. 7, ECF 55. In support, he offers his interrogatory response in which he stated, "My understanding was that I was supposed to notify the nearest staff member that a violation of PREA had occurred, and to also call the PREA hotline and notify ADA counselors, which I did." Chavez Decl., Ex. 2, ECF 56. Plaintiff also claimed that, while the process of making a PREA complaint was made clear to AICs in many ways, "[t]hey do not tell you that you also have to grieve through a common grievance process." *Id.* He further stated that he believed his PREA complaint was "adequate," based on a prior experience in which he went to his counselor and "it was taken care of." *Id.*

"[W]hen a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is . . . unavailable." *Ross*, 136 S. Ct. at 1859. However, the Supreme Court has explained that "the [grievance] procedures need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to their meaning." *Id.* Instead, "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.*

Here, the grievance procedure was not "unknowable" because ODOC policy contains a procedure for "Grievance Regarding Allegations of Sexual Abuse," which states that "[g]rievances alleging sexual abuse must be submitted to the functional unit grievance coordinator on the department's approved inmate grievance form (CD117)." Humphreys Decl.,

attach. 2, ECF 40. Plaintiff was informed of the grievance process during AIC orientation when he first arrived at the facility, and information regarding the grievance process is contained in the AIC handbook and on the reverse side of the grievance form. *Id.* ¶ 8. Plaintiff has filed more than 40 other grievances, including two grievances within six weeks of his PREA complaint, demonstrating he had experience with and an understanding of the grievance process. *See id.*, attachs. 3-6. Plaintiff's erroneous interpretation of CRCI's grievance procedures is insufficient to show they are so "opaque" that they are "incapable of use." *Ross*, 136 S. Ct. at 1859; *accord Crum v. Beal*, No. 6:16-CV-00600-HZ, 2017 WL 1946314, at *5 (D. Or. May 8, 2017) (concluding a prisoner's grievance remedy was not "opaque" and explaining that "[w]hile prisoners should not need a law degree and an understanding of every corner of state statutes and case law to understand what claims need to be exhausted, these regulations are not so confusing as to make the grievance process unavailable to the ordinary prisoner") (citation, internal quotation marks, and alterations omitted).

At the end of his interrogatory responses, plaintiff also states: "Additionally, the grievance materials are not in large print, and I am legally blind from an incurable eye disease. It is more accommodating for me to deal with something verbally because of my eyesight." Chavez Decl., Ex. 2, ECF 56. However, plaintiff offers no additional argument on this issue. And "[t]he bulk of authority . . . has consistently held that individuals with disabilities or mental illness must nonetheless comply with the PLRA's exhaustion requirements." *Johnson v. D.C.*, 869 F. Supp. 2d 34, 39–40 (D.D.C. 2012) (collecting cases).

Accordingly, the administrative remedies were not effectively unavailable to plaintiff.

B.   "Nature of the Wrong"

Finally, citing *Griffin v. Arpaio*, 557 F.3d 1117 (9th Cir. 2009), plaintiff contends that ODOC had sufficient "notice of the 'nature of the wrong.'" Resp. 8, ECF 55 (quoting *Griffin*, 557 F.3d at 1120). In *Griffin*, the Ninth Circuit held that the plaintiff's "failure grieve deliberate indifference does not invalidate his exhaustion attempt." 557 F.3d at 1120. However, here, plaintiff did not file a grievance at all, and *Griffin* cannot be read to excuse plaintiff's obligation to exhaust administrative remedies. In fact, in *Griffin*, the Ninth Circuit ultimately concluded that the plaintiff "failed to exhaust properly" because he "did not alert the prison to the nature of his problem." *Id.* at 1121.

Plaintiff also cites *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016), for the proposition that "'[w]hen prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits, the purposes of the PLRA exhaustion requirement have been fully served,' and the inmate's claim is exhausted." Resp. 9, ECF 55 (quoting *Reyes*, 810 F.3d at 657). But in that case too, the plaintiff had filed a grievance, and the Ninth Circuit's decision in no way abrogates the PLRA's exhaustion requirement. In fact, the Ninth Circuit expressly observed that the PLRA requires inmates to exhaust available administrative remedies. *Id.* at 657 (citations omitted). Rather, the issue in *Reyes* was whether a claim is exhausted when "prison officials opt not to enforce a procedural rule but instead decide an inmate's grievance on the merits." *Id.* at 658. The Ninth Circuit concluded "that a prisoner exhausts 'such administrative remedies as are available,' . . . under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Id*. Those are not the circumstances in this case.

9 – OPINION AND ORDER

For these reasons, plaintiff's argument that his PREA complaint alerted defendants to the nature of the wrong fails.

### III. Dismissal Without Prejudice

"If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled on other grounds by Albino*, 747 F.3d 1162; *see also Carrea v. California*, 551 F. App'x 368, 369 (9th Cir. 2014) (remanding for the entry of dismissal without prejudice because the proper remedy for non-exhaustion is dismissal without prejudice) (cited pursuant to Ninth Circuit Rule 36-3). Even if plaintiff "can no longer exhaust administrative remedies as to the claims in this case" and "refiling his complaint . . . would be futile," this court is "bound by *Wyatt v. Terhune*" to dismiss this case without prejudice.

## ORDER

Defendants' Motion for Summary Judgment (ECF 39) is GRANTED and this case is dismissed without prejudice.

DATED April 30, 2021.

        /s/ Youlee Yim You
        Youlee Yim You
        United States Magistrate Judge